### CRAWFORD v. HUBBELL.

(Circuit Court, S. D. New York. November 5, 1898.)

INTERNAL REVENUE—CONSTRUCTION OF ACT OF 1898—STAMPS ON RECEIPTS FROM CARRIERS.

The provision of the revenue act of 1898 requiring carriers to affix stamps to receipts given to shippers contains no express language prohibiting a carrier from requiring payment for such stamp from the shipper, in the absence of which such requirement is lawful.

This was a suit by William Crawford against William L. Hubbell, as treasurer of the Adams Express Company, to test the legality of a rule of the company requiring shippers to pay for the stamps required to be affixed to receipts executed by the company for goods received for shipment, by the revenue act of 1898. Heard on motion for preliminary injunction.

Dill, Seymour & Baldwin, F. R. Kellogg, and Joseph H. Choate, for plaintiff.

Seward, Guthrie & Steele, for defendant.

LACOMBE, Circuit Judge. I am right in the assumption that this is a motion for a preliminary injunction, am I not?

Mr. CHOATE. Yes.

LACOMBE, Circuit Judge (orally). This is a case, undoubtedly, of very great importance; and it is, moreover, one of those cases in which the most important object is to secure the earliest final determination of the case. Undoubtedly, it will go to the supreme court of the United States eventually, whatever may be the decision of any of the lower courts or of the circuit courts of appeal, and it is most desirable to get it there as expeditiously as it can be sent. The delay which would be incurred by taking the case under advisement, on briefs, and holding it for weeks, perhaps, in order to study the case and write an opinion, which, in orderly sequence, would be but the first of three, would simply work a delay and accomplish no good purpose, especially in view of the fact that it is mainly a question of the interpretation of an act according to its intent, which is always a matter of great uncertainty, and sometimes leads to the most startling results, as in the case of the Holy Trinity. Under those circumstances, it

seems to me best that I should dispose of this here and now, on my first impression; and, if you wish to print your briefs at once, there is no reason why you may not have an argument at the December session of the court of appeals, and get at least as far along as that. Unfortunately, inasmuch as you have not come here on an agreed statement of facts and an application for a final hearing, but are here only for a preliminary injunction, I doubt very much whether you can get any further than the circuit court of appeals; but a decision of that tribunal will be controlling on the circuit court here, and there will be no difficulty in your getting an expeditious entry of a decree, and carrying the case up. It remains for me then to dispose of this case according to my first impression, and I shall state my conclusions with extreme brevity.

I start with the proposition that as between individual citizens, whether they be natural individuals or corporations, common carriers, or what not, originally there is the right to agree as to who should bear the burden of the service rendered, and of all the incidents of the rendition of that service. That a common carrier is subject to regulations by congress as to limitations upon his power to make such agreement with the individual citizen is not disputed. The proposition, however, is, has congress prohibited in this particular case the carrier from requiring the shipper to pay the increased expense of performing the act of transportation which the purchase, affixing, and cancellation of this stamp cause the carrier in the first instance to incur? There is no express language in the act, that I can find, laying the burden of that prohibition upon the carrier; and inasmuch as restrictions of the right to contract, which is a right of a great deal of importance and value to the citizen, whether he be an individual or a corporation, should not be spelled out of any uncertain language, or found to exist unless the case is abundantly clear, I am induced, in the absence of express language, to reach the conclusion, upon this mere cursory hearing of the oral argument, and without the careful analysis and examination of the cases which might perhaps lead me to a different conclusion— I am constrained, I say, to reach the conclusion that the act has not prohibited the carrier from requiring the party tendering the goods to pay to the carrier the increased sum which the act of congress has made the particular act of transportation cost the carrier. I shall therefore deny the motion for a preliminary injunction.

I will speak to my associates, and if your papers are printed and ready, with the briefs, before the December session, I have no doubt they will take it up at an early date, and a decision may be reached by the 1st of January. Or (and it seems to me the wiser course) if counsel will now, by agreement between them, go to work and put in the answer (if one is not in), and prepare an agreed statement of facts, to embody what is in these affidavits, and lay the case before me as if I was sitting regularly in equity, I will make a final decree dismissing the bill for lack of equity; and that is appealable eventually to the supreme court of the United States. You can put it in that shape in the course of three or four days, and get it printed for the December session; and, if the supreme court will be as good to

you as we are here, there is no reason why you should not get a final decision before the 1st of March. And it seems to be of the utmost importance, not only to the express company, but to the individual shipper and everybody else, to have this matter authoritatively settled. It is extremely necessary that there should be an early decision in the court of last resort. A decision here is worth nothing; it will not settle the question.

Mr. KELLOGG. With your permission, we will confer at the earliest possible moment, and then submit to your honor the result.